FILED
2021 Apr-12  AM 11:03
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TERI WILLIAMS INDIVIDUALLY AND | ] | |
| AS NEXT OF FRIEND | ] | |
| OF MINOR KIRBY WILLIAMS, | ] | |
| MACKYNZIE KIRBY, AND | ] | |
| GABRIELLE KIRBY | ] | |
| | ] | |
| PLAINTIFFS, | ] | CASE NO. |
| | ] | |
| v. | ] | |
| | ] | JURY |
| CITY OF ATHENS, a municipal corporation, | ] | DEMAND |
| TREY HOLLADAY, individually and Interim | ] | |
| Superintendent of Athens City Schools, | ] | |
| RICK CARTER, individually and as | ] | |
| Interim Principal Athens High School, | ] | |
| RANDY VICKERS, Athens Police Officer, | ] | |
| BOBBY HAND, Athens Police Officer, and | ] | |
| TERRY HAND, Athens Police Officer. | ] | |
| | ] | |
| DEFENDANTS. | ] | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C §§ 1331, 1343, 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction pursuant to 28 U.S.C § 1367 (a). Plaintiffs allege that they had the right under the Fourth Amendment to be safe and secure against excessive

force and unreasonable searches and seizures and that they had a right to record the conduct of the Athens Police officers effecting arrests on the Athens High School campus.

2. The events and conduct of the Defendants complained of occurred within the Northern District of Alabama, Northeastern Division at Athens High School (AHS) located in Limestone County, AL. This case is properly brought in the Northern District of Alabama.

**PARTIES**

3. Plaintiff Teri Williams is an individual who resides in Athens, Alabama and is the mother of Kirby Williams who is seventeen (17) years at the time of filing this complaint and was fifteen (15) years old at the time of the events that form the basis of this complaint. Williams brings this action individually and on behalf of her minor son.

4. Plaintiff Mackynzie Kirby is an individual above the age of 19 years. She was seventeen (17) years old at the time at the time of the events that form the basis of this complaint.

5. Plaintiff Gabrielle Alexis Kirby is an individual above the age of 19 years. She was seventeen (17) years old at the time at the time of the events that form the basis of this complaint.

6.  Defendant, City of Athens, is a municipality incorporated in the State of Alabama. Although it has no duty to provide security for the students and staff of schools operated by the Athens Board of Education, it has voluntarily assumed that duty by providing Athens Police Officers for various Athens City schools, including AHS.

7.  Defendant, Trey Holladay (Holladay), is over the age of 19 years and was, at all relevant times, the Superintendent for the Athens City Schools System. He was so appointed by the Athens Board of Education. As such, he was an agent and official of the Athens Board of Education. He is sued in his individual capacity and also as an agent and official of the Athens Board of Education/Athens City Schools. Holladay was fired from Athens City Schools in October 2020. He was placed on administrative leave in June of 2020 after the FBI raided his home as part of a two-year-long investigation that resulted in his being charged with conspiracy, fraud, and identity theft.

8.  Defendant, Rick Carter (Carter), is over the age of 19 and was, at all relevant times, the Interim Principal of  AHS. He is sued in his individual capacity.

9.  Defendant, Randy Vickers (Vickers), is over the age of 19 years and was, at all relevant times, a police officer for the Athens Police Department. He is sued in his individual capacity.

10. Defendant Bobby Hand (B. Hand) is over the age of 19 years and was, at all relevant times, a police officer with the Athens Police Department. He is sued in his individual capacity.

11. Defendant, Terry Hand (T. Hand), is over the age of 19 years and was, at all relevant times a police officer with the Athens Police Department. He is sued in his individual capacity.

12. The defendants, as stated in the caption of the complaint, were at all times, legal persons or entitles within state of Alabama. They were state actors during the course of this incident as more particularly described below, in that they used the power of the state to effectuate excessive physical force against Kirby Williams ("Williams"), Mackynzie Kirby ("M. Kirby"), and Gabrielle Kirby ("G. Kirby"). At all relevant times, the individual defendants were acting under color of state law.

**THE FACTS**

13. Substantially all the events complained of occurred on or near the campus of AHS on or about April 10, 2019.

14. Within six months of the date of the actions made the basis of this claim, the City of ATHENS was given notice of the potential claims made the basis of this lawsuit and/or Plaintiff(s) otherwise filed a notice with the City of

4

ATHENS in compliance with Section 11-47-23 and 11-47-192 of the Code of Alabama.

15. Plaintiff Terri Williams is the mother of Kirby Williams.

16. WILLIAMS was an A-B honor roll student and a sophomore at the time of the events that form the basis of this complaint.

17. M. KIRBY was an A-B honor roll student and a sophomore at the time of the events that form the basis of this complaint.

18. G. KIRBY was an A-B honor roll student (3.2 GPA), National Art Society member, Girls Basketball Team Captain, and a senior at the time of the events that form the basis of this complaint.

19. Upon information and belief, Vickers, at the time he was hired by the Athens Police Department and prior to being allowed to provide "security" and/or policing duties at AHS, had a documented history of domestic violence, drug abuse and/or applying excessive force in the performance of his official duties.

20. On or about March 25, 2019, Carter was installed as an interim principal at AHS.

21. At that time, Carter had no prior experience serving as a principal in a high school setting.

22. The City of Athens and Athens Police Department claim not to have a formal School Resource Officer Program. However, members of Athens City Schools routinely refer to the APD officers as "SRO's," or School Resource Officers.

23. The City of Athens does not require any formal training for its officers who provide policing and/or security services in school or educational settings.

24. At all times relevant, the National School Resource Officer and the Alabama School Resource Officer programs provide training, resources, guidance, and certifications for many municipalities that place law enforcement officers in school settings.

25. On or about April 9, 2019, five (5) AHS students, were suspended (21 days of In-School-Suspension) for being overly talkative or disruptive in class. The class in question was taught by Ms. Megan Dillard, a first-year teacher. The suspended students were all seniors and African-American. The students were all in good academic standing, on schedule to graduate and "walk" at a graduation ceremony on or about May 23, 2019.

26. Carter, in response to hearing the complaints concerning the students stated "I am the new sheriff in town," which seemed to only add to the intensity of the dispute.

27. The students and their parents believed the punishment was too harsh and they scheduled a meeting for April 10, 2019 to discuss the same.

28. The suspensions would have prevented each of the students from participating in senior activities such as prom, graduation ceremony, and other senior week activities. Moreover, the suspensions did not comply with the terms of the AHS code of conduct policies and procedures.

29. The students also requested that other students from Ms. Dillard's class join them for the April 10th meeting with the principal to provide additional perspective and testimony in support of their position and permission was granted for the other students to join the meeting.

30. The meeting was to occur in the principal's office, located near the front entry of the school and was set to occur at or around noon near the time of the recess period commonly referred to as "Power Hour."

31. The five seniors believed that they had been unfairly targeted by Ms. Dillard and Carter due to their race as African-Americans and sought redress of this issue during the meeting with the interim principal.

32. Ms. Dillard had threatened to have the high school senior students expelled and arrested for what she described as disruptive behavior, allegedly being overly talkative.

33. Kirby Williams and M. Kirby were not members of the group of five students referenced above nor were they members of Ms. Dillard's class but, because it was "Power Hour," they happened to be in the area of the AHS near the front office, main foyer, and main lobby.

34. G. Kirby was a member of the group of five students referenced above and in Ms. Dillard's class.

35. During or after the April 10th meeting there was a disagreement between one of the students and an Athens Police Officer that resulted in the student being arrested and charged with disorderly conduct.

36. Many students, teachers, and a few parents witnessed the arrest. Some students and parents believed the arrest was unwarranted and expressed the same to the Athens police officers on the scene at the school.

37. Three students, including G. Kirby and Williams, were arrested and charged with disorderly conduct and/or resisting arrest.

38. One parent was also arrested and charged with disorderly conduct and resisting arrest.

39. On or about April 10, 2019, Kirby Williams was arrested and charged with disorderly conduct and resisting arrest. The minor-child had no previous allegations of unlawful conduct and no juvenile record.

40. On or about April 10, 2019, G. Kirby was arrested and charged with disorderly conduct and resisting arrest. The minor-child had no previous allegations of unlawful conduct and no juvenile record.

41. On or about April 10, 2019, M. Kirby, was assaulted by Vickers and, as a result, sustained serious injuries including a dislocated shoulder.

42. Kirby Williams and G. Kirby sustained physical injuries including contusions, bruises, abrasions, and soreness of their wrists.

43. At the time of Williams' arrest, it is undisputed that she was outside the school and not in the foyer area.

44. Just prior to Williams being arrested, students had congregated or otherwise assembled inside the building near the front office, main foyer and main lobby.

45. G. Kirby had express permission to be in the front office as she had an appointment to speak with the principal.

46. M. Kirby was present in the main foyer/lobby area initially due to the "Power Hour" break and later because she was being "checked out" of school early by express permission granted by her mother.

47. At the time of his arrest, Williams was standing alone, not assembled or otherwise standing with a group of students.

48. The video and audio recordings provided by APD (bodycam video of B. Hand and Vickers), AHS surveillance video and video recorded by AHS students will confirm that at the time of, and just prior to, Williams' arrest these facts:

    a. Williams was recording the arrest of Amanda Loggins and was at least 10-15 feet away from B. Hand as B. Hand placed Loggins into the patrol car and that Williams was not yelling anything and certainly not any profanities;

    b. Williams was not interfering with the arrest or engaged in any activity that could reasonably be deemed as posing a physical threat to Vickers or B. Hand;

    c. B. Hand and Vickers yelled at him to "go! go!" and Williams began to walk backwards to the school entrance but did not initially stop recording;

    d. Vickers, without any verbal warning or indication that he was placing Williams under arrest, initiated physical contact with Williams by grabbing his arm and wrist as Williams was retreating towards the school (i.e., complying) and that Williams stopped recording and dropped his phone due to being grabbed;

    e.  Williams was standing alone at the time Vickers first made physical contact with him;

    f.  Williams was not yelling or creating a disturbance at the time that Hand and Vickers verbally engaged him or at the time Vickers initiated physical contact with him;

49. The relevant portion of the arrest reports are as listed below:

    a.  "Officer Bobby Hand had a subject in handcuffs and as he is walking the subject to his patrol car another student was following him. Officer Hand asked me to get the student to leave but when I told the student "Kirby Williams" to leave he started yelling loudly and did not disperse. After Kirby failed to following (sic) orders and was yelling at me I attempted to arrest him for disorderly conduct. I grabbed Kirby's left wrists (sic) to place him in handcuffs but he started resisting and trying to jerk his arm away." Ofc. Randy Vickers – Arrest Report Additional Arrest Narrative Continued

    b.  "When I placed Mrs. Loggins in the back of my patrol unit, another student was coming up on me. He was identified as KIRBY. Officer Randy Vickers was nearby and I advised him to have the student escorted back. When I closed the door on Mrs. Loggins, I turned around and noticed that Officer Vickers had to get hands on with the

student…I ran over and assisted grabbing the students left arm and placing it behind his back while holding him down." Ofc. Hand – Arrest Report Arrest Narrative

50. The relevant portion of the video footage provided by APD in response to Williams' request for discovery may be summarized as follows:

    a. "Go! Go! Get him out of here!" – B. Hand

    b. "Get out of here! Get out of here!" – Vickers

    c. "Don't touch me" states Williams as he is retreating after hearing B. Hand's statement and Vickers' statement.

51. At the time of his arrest, there was no crowd and no one with whom Williams was congregating.

52. Additionally, there was no yelling or profanity from Williams.

53. Then without warning or any other order, Vickers grabbed Williams' left arm.

    a. "Don't touch me! Get off of me!" states Williams.

54. B. Hand then, after physical contact was initiated by the officers, placed his weight on top of Williams and said "stop resisting."

55. Williams then pleads and cries:

    a. "Please, please, please" "Stop!" "I ain't do nothing" "Please, please, please" "I ain't even moving!"

b.  B. Hand or Vickers ordered, "Put your right arm behind your back" states.

c.  "Ah, ah, I can't" "I can't move" said Williams.

56. Upon being handcuffed, Williams was escorted to the patrol car and he was understandably upset. This is the first instance in which you hear yelling or profanity from Williams.

## COUNT I

## RETALIATORY ARRESTS SECTION 1983 VIOLATION OF THE FIRST AMENDMENT (Vickers, B. Hand, T. Hand)

57. Terri Williams, for herself and as next of friend of Kirby Williams, hereby adopts and realleges each and every allegation in paragraphs 1 through 56 of this complaint as if fully set out herein.

58. Prosecution instituted for the purpose of punishing the respondent's exercise of constitutional rights provides a sufficient legal basis to support Williams' §1983 claims arising from the same conduct. See *Holt v. Virginia*, 381 U.S. 131 (1965); cf. *Wright v. Georgia*, 373 U.S. 284 (1963); *Sobol v. Perez*, 289 F. Supp. 392 (E.D. La. 1968); *Lozman v. City of Riviera Beach, Florida*, 138 S. Ct. 1945 (2018). "Appellate courts throughout the country have unanimously held that citizens have a constitutional right to record the public actions of on-duty police officers so long as they do not physically interfere with those actions." [1]

---

[1] *Glik v. Cunnife*, 655 F.3d 78, 82(1st Cir. 2011)(affirming First Amendment "right to videotape police carrying out their duties in public"); accord Gericke v Begin, 753 F.3d 1 (1st Cir. 2014); *Fields v. City of Phila.*,2017 U.S. App. LEXIS 12159, at *$(3d Cir. July 7, 2017)("joining

59. Williams had a First Amendment "free speech" right to record matters of public interest. Free speech is limited where there is a lack of information on matters of public interest and public concern. The ability of the public to be informed regarding matters such as the "policing" of students and other citizens on a high school campus is without question a matter of public interest and public concern. In *Smith v. City of Cumming*, 212 F.3d 1332 at1333 the Eleventh Circuit recognized "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct."

60. Defendants B. Hand, T. Hand and Vickers, knew or should have known of Williams' First Amendment "free speech" right to record matters of public interest, namely the arrest of a fellow student or the parent of a fellow student in a public setting.

61. Here, Williams, attempted to record the arrest of Amanda Loggins on the campus of AHS. Williams complied with the officers' commands and did not interfere with the arrest or otherwise create any reasonable apprehension of fear or public disturbance in recording the officers or thereafter prior to the arrest.

---

"growing consensus" of circuit courts upholding First Amendment right to "photograph, film, or otherwise record police officers conducting their official duties in public"); *Turner v. Driver,* 848 F.3d 678, 690 (5th Cir. 2017)("We agree with every circuit that has ruled on this question: Each has concluded that the First Amendment protects the right to record the police."); *Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 600-01(7th Cir. 2012)(recognizing First Amendment right "to openly audio record the audible communications of law-enforcement officers…when the officers are engaged in their official duties in public places"); see also *Schnell v. City of Chicago*, 407 F.2d 1084, 1085-86(7th Cir. 1969)(recognizing "constitutional right to…photograph news events"; the news events were demonstrations against the police at the 1968 Democratic National Convention in Chicago), *Fordyce v. City of Seattle*, 55 F.3d 436, 439(9th Cir. 1995)(recognizing "First Amendment right to film matters of public interest" in context of public demonstration directed in part against police)

62. Video evidence and witness testimony confirm that Williams was more than 10-15 feet away from the arrest as it occurred and that when Williams was told to "go, go!" he actually began to walk backwards towards the school. Instead of allowing Williams to continue to record as he walked toward the school door he was seized and arguably assaulted by Vickers and then B. Hand.

63. B. Hand told Vickers to "get him out of here" to prevent Williams from exercising his constitutional right to record B. Hand's actions. Thus, both the attempt to force Williams to stop recording and the subsequent arrest were unconstitutional.

64. Delinquency proceedings were ultimately instituted against Williams, who alleges the purpose of the delinquency proceedings and subsequent administrative punishments were retaliatory and in response to Williams engaging in protected activity or otherwise for the purpose of suppressing his "Free Speech" as protected by the First Amendment.

65. Plaintiff Terri Williams as next of friend of K. Williams alleges that Vickers, T. Hand, and B. Hand arrested Williams because he was recording the duties of a law enforcement officer in a public setting while posing no harm or threat of interference and thus, in violation of the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C 1983.

**WHEREFORE PREMISES CONSIDERED**, plaintiffs demand judgment for compensatory and punitive damages under Section 1983, in an amount to be determined, for some or all of the retaliatory acts the above-named officers as heretofore described above. Plaintiffs allege that because of the above each suffered humiliation and shame and mental distress.

## COUNT II

## EXCESSIVE FORCE UNDER SECTION 1983 VIOLATION OF THE FOURTH AMENDMENT (Vickers, B. Hand, T. Hand)

66. Plaintiffs hereby adopt and reallege each and every allegation in paragraphs 1 through 56 of this complaint as if fully set out herein.

67. Plaintiff M. Kirby alleges that Vickers used an unreasonable and excessive amount of force when he exercised the use of a martial arts, open hand blow to her neck, chest, back even though she was not posing any threat to the officers and thus, in violation of the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C 1983.

68. Plaintiff G. Kirby alleges that Vickers, T. Hand and B. Hand used an unreasonable and excessive amount of force when they physically detained, handcuffed, hit, and shoved her though she was not posing any threat to the officers and thus, in violation of the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C 1983.

69. Plaintiff Terri Williams as next of friend of Williams alleges that Vickers, T. Hand, and B. Hand used an unreasonable and excessive amount of force against Williams when they tackled, body-slammed, and tossed Williams, and placed the full weight of at least two officers on the back of Williams though he was not posing any threat to the officers and thus, in violation of

the Fourth Amendment of the United States Constitution pursuant to 42

U.S.C 1983.

**WHEREFORE, PREMISES CONSIDERED** Plaintiffs demand judgment for

compensatory and punitive damages under Section 1983, in an amount to be

determined, for some or all of the excessive acts of force of the above-named

officers as heretofore described above. Plaintiffs allege that because of the above

each suffered humiliation and shame and mental distress.

**COUNT III**
**ASSAULT AND BATTERY**
**(Vickers, T. Hand, B. Hand, City of Athens)**

70. Plaintiffs hereby adopt and reallege each and every allegation in paragraphs 1
    through 56 of this complaint as if fully set out herein.

71. Defendant Vickers assaulted and battered Plaintiff M. Kirby by willfully and
    intentionally inflicting physical harm to her through the use of a martial arts
    physical blow to the neck, shoulder and back of the minor child in which he
    had, or should have had, knowledge that the she was a minor and posed no
    reasonable threat of harm to him.

72. Defendants Vickers, T. Hand and B. Hand assaulted and battered Plaintiff
    Kirby Williams by willfully and intentionally inflicting physical harm to him
    through the use of a full body tackle, hip toss, body slam technique and then
    placing the full weight of the officers on the back of the minor child while

twisting and contorting his arms, back and hands, in which each had, or should have had, knowledge that he was a minor and posed no reasonable threat of harm to the them and that there was no basis in support of seizing him.

73. Defendants Vickers, T. Hand and B. Hand assaulted and battered Plaintiff G. Kirby by willfully and intentionally inflicting physical harm to her through the use of applying unnecessary and excessive physical force to the neck, shoulder and back of the minor child in which each, had, or should have had, knowledge that the she was a minor and posed no reasonable threat of harm to them.

74. Said actions of the Defendants were known by the Defendants to carry a probability of causing physical, medical, and psychological risks and to injure the Plaintiffs.

75. Said actions of the Defendants were in clear dereliction of fundamental humanitarian principles and in violation of rights protected by the United States Constitution, Alabama Constitution, state law and federal law.

76. Said actions of the Defendants, Vickers, T. Hand and B. Hand, were committed within the line and scope of their employment as Athens police officers.

77. As a result of the Defendants' actions, Plaintiffs have suffered ongoing mental anguish, and physical, psychological, and emotional injuries.

**WHEREFORE, PREMISES CONSIDERED** Plaintiffs demand judgement against Defendants T. Hand, B. Hand, and Vickers, for compensatory and punitive damages in an amount which the jury finds reasonable and justifiable under the circumstances, plus costs and interest.

**COUNT IV**
**FALSE IMPRISONMENT (T. Hand, B. Hand, Vickers, City of Athens)**

78. Plaintiffs G. Kirby and K. Williams (Terri Williams) hereby adopts and realleges each and every allegation in paragraphs 1 through 56 of this complaint as if fully set out herein.

79. Defendant B. Hand, T. Hand and Vickers, unlawfully held Williams and G. Kirby against their will and deprived them of their liberty rights protected by the Alabama Constitution and the US Constitution when they detained them, respectively.

80. Williams was arrested and charged with disorderly conduct and resting arrest.

81. G. Kirby was arrested and charged with disorderly conduct.

82. Williams and G. Kirby were both detained for hours following the arrests cited above. All of the forgoing occurred without probable cause or other reasonable basis for detention. The Defendants' malicious and sadistic

behavior toward the Plaintiffs described herein failed to meet contemporary standards of decency and caused needless and wanton infliction of pain and suffering.

83. Said actions by Vickers, T. Hand and B. Hand were committed when they were employed by the City of Athens and in the line and scope of said employment.

84. As a result of the Defendants' actions, the Plaintiffs have suffered severe physical, psychological, and emotional injuries.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against Defendants City of Athens, Vickers, T. Hand and B. Hand for compensatory and punitive damages in an amount which the jury finds reasonable and justifiable under the circumstances, plus costs and interest.

## COUNT V
## NEGLIGENT/WANTON HIRING, SUPERVISION AND TRAINING
## (CITY OF ATHENS, TREY HOLLADAY, RICK CARTER)

85. The Plaintiffs hereby adopt and reallege each and every allegation in paragraphs 1 through 56 of this complaint as if fully set out herein.

86. The City of Athens, Holladay and Carter failed to use reasonable care acts in hiring, training, and supervising APD police officers in particular as it relates to resolving juvenile issues in an educational setting, addressing,

apprehending or detaining a suspect or person of interest who is a minor child

or juvenile were below the applicable standard and were not reasonable.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for judgment

against Defendants City of Athens, Carter and Holladay for compensatory and

punitive damages in an amount which the jury finds reasonable and justifiable

under the circumstances, plus costs and interest.

## COUNT VI
## CLAIM FOR MUNICIPAL LIABILITY AGAINST THE CITY OF ATHENS (CITY OF ATHENS)

87. The Plaintiffs hereby adopt and reallege each and every allegation in

paragraphs 1 through 56 of this complaint as if fully set out herein.

88. Ala Code 11-47-190 states,

> "No city or town shall be liable for damages for injury done to or
> wrong suffered by any person or corporation, unless such injury or
> wrong was done or suffered through the neglect, carelessness, or
> unskillfulness of some agent, officer, or employee of the municipality
> engaged in work therefor and while acting in the line of his or her
> duty, or unless the said injury or wrong was done or suffered through
> the neglect or carelessness or failure to remedy some defect in the
> streets, alleys, public ways, or buildings after the same had been
> called to the attention of the council or other governing body or after
> the same had existed for such an unreasonable length of time as to
> raise a presumption of knowledge of such defect on the part of the
> council or other governing body and whenever the city or town shall
> be made liable for damages by reason of the unauthorized or wrongful
> acts or negligence, carelessness, or unskillfulness of any person or
> corporation, then such person or corporation shall be liable to an
> action on the same account by the party so injured. However, no

recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding."

Plaintiffs allege that the actions of City of Athens employees, as described above were negligent, careless and unskillful.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant City of Athens for compensatory damages in an amount which the jury finds reasonable and justifiable under the circumstances, plus costs and interest.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request the following relief:

   a. That this Court render a judgment finding the Defendants liable for the aforementioned causes of action;

   b. That is Court issue an Order requiring the Defendants to pay the Plaintiffs an award of damages to compensate emotional, physical, and psychological injury;

   c. An award of punitive damages;

d.  That this Court issue an Order requiring the Defendants to pay for all litigation costs, expenses, and reasonable attorney's fees associated with the filing of this action pursuant to 42 U.S.C. 1988; and

e.  All other relief to which Plaintiffs are entitled or that the Court deems just and proper.


*/s/ Richard A. Rice*
**RICHARD A. RICE**
**ASB8387I66R**
**ATTORNEY FOR PLAINTIFFS**

**OF COUNSEL:**

THE RICE FIRM, LLC
PO BOX 453, Birmingham, AL 35201
P: 205.618.8733
F: 888.391.7193
 E: rrice@rice-lawfirm.com

PLAINTIFFS DEMAND A TRIAL BY JURY DEMAND

DEFENDANTS MAY BE SERVED AT THE ADDRESSES BELOW.

CITY OF ATHENS
200 West Hobbs Street Athens, AL 35611.
Mailing Address: PO Box 1089. Athens, AL 35612
Fax: 256-233-8721

TREY HOLLADAY
455 US Highway 31 N.,
Athens, AL 35611

RICK CARTER
455 US Highway 31 N.,
Athens, AL 35611

RANDY VICKERS
200 West Hobbs Street Athens, AL 35611.
Mailing Address: PO Box 1089. Athens, AL 35612
Fax: 256-233-8721

BOBBY HAND
200 West Hobbs Street Athens, AL 35611.
Mailing Address: PO Box 1089. Athens, AL 35612
Fax: 256-233-8721

TERRY HAND
200 West Hobbs Street Athens, AL 35611.
Mailing Address: PO Box 1089. Athens, AL 35612
Fax: 256-233-8721