FILED

2023 Jan-11  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TERI WILLIAMS,** *as next of friend of Minor Kirby Williams*, *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 5:21-cv-510-LCB** |
| **RICK CARTER,** *et al.*, | ) ) ) | |
| **Defendants.** | ) | |

## <u>OPINION & ORDER</u>

This suit arises from an altercation between students, parents, and police officers at Athens High School in April 2019. Three of the students—Kirby Williams, Mackynzie Kirby, and Gabrielle Kirby—allege that Athens Police Officers Randy Vickers and Bobby Hand retaliated, arrested, and used force against them in violation of federal and state law. (Doc. 70 at 16–36). In all, Plaintiffs bring thirteen claims against Officer Vickers, Officer Hand, then Interim Principal of Athens High School Rick Carter, and then Interim Superintendent of Athens City Schools Trey Holladay. *Id.* at 16–43.[1]

---

[1] The Court previously dismissed the claims against Superintendent Holladay—Counts XI and XIII of Plaintiffs' third amended complaint—for lack of service under Federal Rule of Civil Procedure 4(m). (Doc. 78 at 4). Thus, Superintendent Holladay is no longer a party to this suit.

Officer Vickers, Officer Hand, and Principal Carter now move to dismiss Counts I–II, V–X, and XII of Plaintiffs' third amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 72 at 1); (Doc. 73 at 1); (Doc. 74 at 1). Plaintiffs oppose the motions. (Doc. 79 at 1); (Doc. 80 at 1). Accepting Plaintiff's allegations as true, which the Court must do at this procedural posture,[2] the Court finds that Counts V–VII state facially plausible claims for relief. Counts I–II, VIII–X, and XII, however, do not. The Court therefore dismisses Counts I–II, VIII–X, and XII with prejudice and orders the parties to begin discovery as to Counts V–VII.

## I.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 establishes the general standard for pleading civil claims in federal court. *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010). Rule 8(a)(2) specifies that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a claim need not contain "detailed factual allegations," but it must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint that fails "to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as

---

[2] *See infra* Section I.

true, to assert a facially plausible claim for relief. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam). A claim is facially plausible when it raises "'a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## II.   BACKGROUND

The following facts, which the Court presumes are true for purposes of Defendants' motions to dismiss, come from Plaintiffs' third amended complaint. On April 9, 2019, Athens High School Interim Principal Rick Carter gave five African-American seniors in-school suspension for being disruptive during a class taught by first-year teacher Megan Dillard. (Doc. 70 at 9). The five students—one of whom was Gabrielle Kirby—were all in good academic standing and on schedule to graduate the following month. *Id.* at 9–10. Faced with suspension, however, the students were no longer able to participate in certain school activities, such as their prom and graduation ceremony. *Id.* at 9. The students complained that Ms. Dillard "unfairly targeted" them due to their race and that the punishment was too harsh. *Id.* at 9–10. Principal Carter dismissed their complaints, commenting, "I am the new sheriff in town." *Id.* at 9.

The next day, the suspended students, their parents, and several other students from Ms. Dillard's class met with Principal Carter to further dispute the suspensions.

*Id.* at 9–10. The meeting took place in Principal Carter's office—near the front entry and main lobby of the school—at noon, which coincided with a recess period known as "Power Hour." *Id.* at 10. As such, a separate group of students and teachers were congregated in the lobby when the meeting occurred. *Id.* at 11–12. Senior Kirby Williams and sophomore Mackynzie Kirby were among the group. *Id.* at 5, 10. Also present in the lobby, at the direction of Principal Carter, were two school resource officers, Athens Police Officers Bobby Hand and Casey Terry. *Id.* at 6, 11, 16.

What happened next is not entirely clear. During or immediately after the meeting, Principal Carter instructed Officers Hand and Terry to remove students from the lobby. *Id.* at 11. A disagreement then broke out between the officers and an unnamed student, which led to Officer Hand arresting the student for disorderly conduct. *Id.* at 11–12. Many students, teachers, and parents witnessed the incident and began protesting the unnamed student's arrest. *Id.* at 12. Nevertheless, Officers Hand and Terry removed the unnamed student from the lobby. *Id.* at 11–12.

Mayhem ensued. On his return to the lobby, Officer Hand began arguing with Amanda Loggins, one of the disgruntled parents. *Id.* at 12. Officer Hand attempted to arrest Loggins, and a struggle followed. *Id.* During the scuffle, and without provocation, Officer Hand struck Mackynzie with a "brachial stun,"[3] causing her to

---

[3] To the best of the Court's understanding, a "brachial stun" is a "sharp blow to the side of the neck" that causes unconsciousness by shocking "the carotid artery, jugular vein, and Vagus nerve."

lose consciousness, fall to the floor, and dislocate her shoulder. *Id.* Officer Hand also grabbed Gabrielle, shoved her against a wall, and pulled her hair before finally securing Loggins. *Id.* At some point amidst the chaos, Officers Hand and Terry radioed for backup, and fellow Athens Police Officer Randy Vickers, who happened to be in the area, responded to the scene. *Id.* at 11.

While putting Loggins into a police cruiser, Officers Hand and Vickers noticed Williams standing roughly fifteen feet away. *Id.* at 13–14. Williams was not engaged in any violent or threatening behavior, making unreasonable noise, using abusive language or gestures, disturbing the public, or obstructing traffic. *Id.* at 13, 19–20. Nor was he interfering with Loggins's arrest or otherwise preventing Officers Vickers and Hand from carrying out their law enforcement duties. *Id.* at 13. Instead, Williams was standing alone, on school grounds, recording Loggins's arrest on his phone. *Id.* at 13, 18.

Officer Hand yelled at Williams to "go" and directed Officer Vickers to "[g]et him out of here." *Id.* at 14. Williams started to walk back toward the school entrance, but did not stop recording. *Id.* at 13. Officer Vickers advanced and grabbed Williams's left arm, at which time Officer Hand tackled Williams to the ground. *Id.* at 14–15. Officers Hand and Vickers arrested Williams for disorderly conduct and

---

Vanessa Sifontes, *Anatomy of the Brachial Stun*, KRAVOLOGY.COM (Aug. 15, 2016), https://kravology.com/anatomy-of-the-brachial-stun/.

resisting arrest. *Id.* at 18, 20, 26. With Williams in a nearby patrol car, Officer Terry—acting on Officer Hand's orders—escorted Gabrielle outside the school and arrested her for disorderly conduct. *Id.* at 15, 32. This suit followed.

## III. DISCUSSION

Officer Vickers, Officer Hand, and Principal Carter move to dismiss Counts I–II, V–X, and XII of Plaintiffs' third amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 72 at 1); (Doc. 73 at 1); (Doc. 74 at 1).[4] Below, the Court considers the facial plausibility of each of these claims, beginning with those arising under federal law.

### A. Federal Claims

Counts I–II and XII arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983. (Doc. 70 at 16–27, 38–41).[5] That statute provides "a federal forum for claims

---

[4] As a threshold matter, Officers Vickers and Hand vehemently argue that Plaintiffs' third amended complaint should be dismissed in its entirety as a shotgun pleading. (Doc. 74 at 4–8); (Doc. 76 at 3–7). There are roughly four types of shotgun pleadings: (1) ones that contain "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) ones that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) ones that fail to separate "into a different count each cause of action or claim for relief"; and (4) ones that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). In this case, Plaintiffs' third amended complaint is far from a model of clarity, but it does not fall within any of the categories listed above. The Court thus declines to dismiss Plaintiffs' third amended complaint as a shotgun pleading.

[5] The Court has subject matter jurisdiction over Counts I–II and XII under 28 U.S.C. § 1331 (providing federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

of unconstitutional treatment at the hands of state officials." *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). In Counts I–II, Williams claims that Officers Vickers and Hand retaliated against him in violation of the First Amendment. (Doc. 70 at 16–27). In Count XII, Plaintiffs collectively assert a claim against Principal Carter under the doctrine of supervisor liability. *Id.* at 38–41. The Court addresses these claims in turn.

### 1.    *Williams's First Amendment Retaliation Claims (Counts I–II)*

Williams fails to state a plausible First Amendment[6] retaliation claim against Officer Vickers or Officer Hand. The doctrine of qualified immunity shields public officials "from civil damages for their discretionary acts when their conduct does not violate a federal right that was clearly established at the time of the challenged action." *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022) (per curiam). The doctrine aims to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

---

[6] The First Amendment reads in relevant part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. CONST. AMEND. I. The Amendment provides not only a right to speak, but also a right to be free from government retaliation for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

To receive qualified immunity, a police officer bears the burden to prove that "he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). Making an arrest, for example, constitutes a discretionary act for purposes of qualified immunity. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019); *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003). If the officer meets his burden, the plaintiff may overcome immunity by showing: (1) that the officer violated a statutory or constitutional right; and (2) that "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Williams claims that Officers Vickers and Hand retaliated against him in violation of the First Amendment. (Doc. 70 at 16, 21). He alleges that, at all times relevant to his arrest, Officers Vickers and Hand "were acting under color of state law." *Id.* at 4. Accordingly, the Court has no trouble concluding that Officers Vickers and Hand acted within their discretionary authority for purposes of Williams's First Amendment retaliation claims.[7] Thus, Officers Vickers and Hand are entitled to qualified immunity on those claims unless Williams plausibly shows that Officers Vickers and Hand retaliated against him in violation of a clearly established First Amendment right.

---

[7] Williams does not make an argument in opposition of this conclusion. (Doc. 79 at 8–12).

A right is clearly established when it "would be apparent to a reasonable officer." *Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013). To prove a right is clearly established, a plaintiff must either: (1) point to "a materially similar decision" of the Supreme Court, Eleventh Circuit, or of the supreme court of the state where the case arose; (2) show that "'a broader, clearly established principle should control the novel facts' of the case"; or (3) demonstrate that the challenged conduct "so obviously" violates the constitution that "prior case law is unnecessary." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)).

The second and third paths "are rarely-trod ones." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). This is due, at least in part, to the Supreme Court's repeated instruction not to "define clearly established law at a high level of generality." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014); *see also al-Kidd*, 563 U.S. at 742. To that end, a plaintiff seeking to overcome qualified immunity by pointing to a broad, general rule of law must show that the identified rule applies "with 'obvious clarity' to the circumstances" of his case. *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007); *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

Williams attempts to proceed via the second path. That is, Williams does not point to a materially similar decision of the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court. Nor does he allege that the facts of this case are so

egregious that Officers Vickers and Hand violated the First Amendment in the total absence of case law. Instead, he cites to *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) for the broad proposition that citizens have a First Amendment right "to photograph or videotape police conduct" in the Eleventh Circuit (Doc. 70 at 17, 23).[8]

The problem for Williams is that *Smith* did not apply with obvious clarity to the circumstances in question. In *Smith*, James and Barbara Smith sued the City of Cumming, Georgia, and its police chief under § 1983. 212 F.3d at 1332. They claimed in part that city police officers prevented Mr. Smith "from videotaping police actions" in violation of the First Amendment. *Id.* The district court granted summary judgment on Mr. Smith's First Amendment claim, and the Smiths appealed. *Id.* at 1332–33.

The Eleventh Circuit affirmed the district court's decision. *Id.* at 1333. In a three-paragraph opinion, the Eleventh Circuit recognized that the Smiths "had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct." *Id.* The court reasoned that the First Amendment "protects the right to gather information about what public officials do

---

[8] Williams also cites a myriad of out-of-circuit cases for the proposition that "[a]ppellate courts throughout the country have unanimously held that citizens have a constitutional right to record the public actions of on-duty police officers so long as they do not physically interfere with those actions." (Doc. 70 at 16 n.5, 22 n.7). These cases have no bearing on whether a First Amendment right to record police conduct is clearly established in this Circuit. *See Powell*, 25 F.4th at 920.

on public property, and specifically, a right to record matters of public interest." *Id.* Nonetheless, the court concluded that the Smiths put forth no evidence of a constitutional violation and that, as a result, summary judgment on Mr. Smith's First Amendment claim was proper. *Id.*

There are two important takeaways from *Smith*. First, citizens have a general First Amendment right to record police conduct *subject to* reasonable time, place, and manner restrictions. Second, whether that right is clearly established—e.g., applies with obvious clarity to a particular set of circumstances—depends very much on the facts of each case. Accordingly, a plaintiff cannot overcome qualified immunity on a First Amendment retaliation claim merely by citing *Smith*. Rather, he must show that the right *Smith* recognized applied with obvious clarity to the time, place, and manner of his speech. Two recent Eleventh Circuit decisions illustrate these points.

In *Crocker v. Beatty*, James Crocker was driving on I-95 when he saw an overturned vehicle in the median. 995 F.3d at 1237. Crocker pulled off onto the shoulder, exited his vehicle, and began photographing the scene with his phone. *Id.* at 1237–38, 1242. Officer Steven Beatty approached Crocker and, after an exchanging of words, confiscated Crocker's phone and ordered him to leave the scene. *Id.* Crocker refused. *Id.* At that time, Officer Beatty placed him under arrest. *Id.* Crocker sued Officer Beatty under § 1983, claiming that Officer Beatty violated

11

his First Amendment right to record police conduct. *Id.* at 1238, 1240. On summary judgment, the district court granted Officer Beatty "qualified immunity because the law underlying Crocker's First Amendment claim wasn't clearly established." *Id.* at 1240.

The Eleventh Circuit affirmed, holding that *Smith*'s "broad pronouncement" of a First Amendment right to record police conduct "didn't apply with 'obvious clarity to the circumstances'" in question. *Id.* at 1241, 1243, 1253 (quoting *Long*, 508 F.3d at 584). The court reasoned that *Smith* "came without much explanation" and provided scant details regarding the facts of the case, undermining the argument that "every reasonable police officer in [Officer] Beatty's position would have known that Crocker had a right to record" the chaotic, "rapidly evolving scene of a fatal crash." *Id.* at 1241–42. The court added that this conclusion was especially true given that Florida law prohibited individuals from standing or walking on the side of an interstate and that, as such, Crocker had diminished First Amendment rights in the area where his arrest occurred. *Id.*

In *Khoury v. Miami-Dade Cnty. Sch. Bd.*, Susan Khoury was taking pictures of cars that she believed were illegally parked at a baseball field near her home when she got into a verbal altercation with a driver of one of the cars. 4 F.4th 1121 (11th Cir. 2021). Officer Gregory Williams responded to the scene and informed the driver that, although the cars were not illegally parked, Khoury had a First

Amendment right to photograph the area. *Id.* at 1122. Meanwhile, Khoury began filming Officer Williams and his police cruiser. *Id.* Seeing Khoury filming him, Officer Williams grabbed Khoury's arm, twisted it behind her back, and took her into custody. *Id.* at 1122–23. The district court ultimately granted Officer Williams qualified immunity on summary judgment. *Id.* at 1124, 1129.

The Eleventh Circuit reversed. *Id.* at 1134. In part, the court held that Khoury had a First Amendment right to film Officer Williams and that such right was clearly established under *Smith*. *Id.* at 1129. Distinguishing the facts in question from those of *Crocker*, the court explained that "Khoury was not violating any laws or harming anyone while she was filming" and that Officer Williams, by his own admission, "knew Khoury had a First Amendment right to film the scene." *Id.* at 1129 n.8. The court therefore concluded that, under the circumstances, "every reasonable police officer in Officer Williams's position would have known" that "Khoury had a right to videotape the scene." *Id.*

The facts of this case are far more akin to those of *Crocker* than those of *Khoury*. Officers Vickers and Hand arrested Williams for recording police conduct on the campus of a public high school during school hours[9]—where individuals, especially minors, have long held diminished First Amendment rights.[10] What's

---

[9] (Doc. 70 at 10, 17, 23).

[10] *See, e.g.*, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, 513 (1969) (holding that, "in light of the special characteristics of the school environment," the First Amendment does

more, Officers Vickers and Hand arrested Williams amidst a chaotic, rapidly developing scene that undoubtably had the potential to turn hostile toward law enforcement at a moment's notice.[11] Given these factual and legal nuances, the Court cannot conclude that *every* reasonable officer in same position as Officers Vickers and Hand would have known that, under *Smith*, Williams had a First Amendment right to record Loggins's arrest. Thus, *Smith* did not apply with obvious clarity to the circumstances in question.

A quick summary is in order. Officers Vickers and Hand acted within their discretionary authority for purposes of Williams's First Amendment retaliation claims. Williams, for his part, does not allege facts plausibly showing that he had a clearly established First Amendment right to record Loggins's arrest. Accordingly, qualified immunity bars Williams's First Amendment retaliation claims. Williams therefore fails to state a plausible retaliation claim against Officer Vickers or Officer Hand.

## 2.   *Plaintiffs' Supervisor Liability Claim (Count XII)*

Plaintiffs fail to state a plausible supervisor liability claim against Principal Carter. Under § 1983, a supervisor is liable for the unconstitutional acts of his

---

not prohibit school officials from regulating student speech that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others"); *accord Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2045 (2021); *Doe v. Valencia Coll.*, 903 F.3d 1220, 1229 (11th Cir. 2018); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1293 (11th Cir. 2007).

[11] (Doc. 70 at 11–15).

subordinates only when he "personally participates" in a constitutional violation or when there is a "causal connection" between his actions and a constitutional violation. *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). This standard "is extremely rigorous." *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

The crux of Plaintiffs' supervisor liability claim is that Officer Hand used excessive force against Mackynzie and Gabrielle in violation of the Fourth Amendment[12] and that Principal Carter, as Officer Hand's supervisor, is liable for Officer Hand's alleged unconstitutional conduct. (Doc. 70 at 39–40).[13] Even assuming for purposes of this opinion that Officer Hand used unconstitutional force against Mackynzie and Gabrielle, and that Principal Carter had supervisory authority over Officer Hand, Plaintiffs fail to allege facts plausibly establishing that Principal Carter personally participated in any constitutional violation or that there is a causal connection between Principal Carter's actions and any constitutional violation.

---

[12] The Fourth Amendment provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. The Amendment protects against the use of excessive force during investigatory stops and arrests. *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021).

[13] Williams's First Amendment retaliation claims—because they are not facially plausible— cannot serve as the basis for Plaintiffs' supervisor liability claim. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.").

### i.    *Personal Participation*

Plaintiffs do not plausibly show that Principal Carter personally participated in any constitutional violation. For purposes of § 1983 liability, a supervisor does not personally participate in a constitutional violation when he directs a subordinate to take a lawful course of action and the subordinate, on his own initiative, engages in unconstitutional conduct. *See Elmore v. Fulton Cnty. Sch. Dist.*, 605 F. App'x 906, 917 (11th Cir. 2015) (per curiam) (holding that a school principal did not personally participate in an arrest merely by directing a police officer employed by the school "to take out a warrant against Plaintiff").

Plaintiffs allege that Principal Carter personally participated in Officer Hand's alleged unconstitutional conduct "by instructing [hi]m first to assemble in the lobby area during the 'power hour' and then to remove Plaintiffs from the lobby area." (Doc. 70 at 40). At the risk of stating the obvious, a principal does not inherently violate the United States Constitution by instructing a police officer to be present in a school lobby or by instructing a police officer to remove students from a school lobby. Thus, Plaintiffs do not plausibly show that Principal Carter personally participated in any constitutional violation.

### ii.    *Causal Connection*

Neither do Plaintiffs plausibly show a causal connection between Principal Carter's actions and any constitutional violation. A plaintiff has three methods for

16

proving a causal connection: (1) show that a history of widespread abuse put the supervisor on notice of the need to correct the alleged deprivation, and the supervisor failed to do so; (2) demonstrate that the supervisor established or adopted an "improper custom or policy" that led "to deliberate indifference to constitutional rights"; or (3) show that the supervisor directed his subordinates to act unlawfully or that the supervisor knew his subordinates "would act unlawfully and failed to stop them from doing so." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (per curiam); *see also Smith v. Owens*, 625 F. App'x 924, 927 (11th Cir. 2015) (per curiam).

Plaintiffs attempt to plead a causal connection under the second method. They allege that Athens High School had a policy "of allowing police officers to be stationed in the school without training" and that "[t]his policy was affirmed and upheld by [Principal] Carter." (Doc. 70 at 40). To succeed under the second method, a plaintiff must identify a specific policy or custom that caused his injury; vague and conclusory allegations of a policy's existence are insufficient to state a plausible supervisor liability claim. *Harvey v. City of Stuart*, 296 F. App'x 824, 826 (11th Cir. 2008) (per curiam).

Plaintiffs do not identify any specific policy or provide factual support for the conclusion that Principal Carter "affirmed and upheld" any Athens High School policy. To the contrary, Plaintiffs assert that then Interim Superintendent of Athens

City Schools Trey Holladay—"as the policymaker for the Athens Board of Education"—"could have pressed for the establishment of a training and supervision program for officers stationed in Athens City Schools." (Doc. 70 at 38, 41). At bottom, these allegations do not come close to plausibly showing that Principal Carter established or adopted an improper policy that led to deliberate indifference to constitutional rights.[14] Plaintiffs therefore fail to state a plausible supervisor liability claim against Principal Carter.

### B.    State Claims

Counts V–X of Plaintiffs' third amended complaint arise under Alabama law. (Doc. 70 at 29–36).[15] Alabama courts recognize two forms of state-law immunity: state-agent immunity and discretionary-function immunity. *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010). State-agent immunity shields police officers from civil liability for conduct that arises from the officer's "exercising judgment in the enforcement of the criminal laws of the State." *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006). By contrast, discretionary-function

---

[14] Plaintiffs allege that Principal "Carter's heavy-handed disciplinary practices (suspending senior students in good academic standing for 21 days simply for talking in class) and chest-thumping pontifications ('I am the new sheriff in town') also causally contributed" to Officer Hand's unconstitutional conduct. (Doc. 70 at 40). These assertions are equally insufficient to state a plausible supervisor liability claim against Principal Carter.

[15] The Court has subject matter jurisdiction over Counts V–X under 28 U.S.C. § 1367 (providing a federal district court with supplemental jurisdiction over state-law claims that are closely related to a claim within the court's original jurisdiction).

immunity protects an officer from liability "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6-5-338(a).

To receive protection under either doctrine, an officer bears the burden to show that the claims against him arise from conduct entitling him to immunity. *Hunter v. Leeds*, 941 F.3d 1265, 1283 (11th Cir. 2019). Making an arrest is both an "exercise of judgment" for purposes of state-agent immunity and a "discretionary function" for purposes of discretionary-function immunity. *Swan v. City of Hueytown*, 920 So. 2d 1075, 1079 (Ala. 2005). Thus, the general rule is that state-agent immunity and discretionary-function immunity protect officers from civil liability for conduct associated with making an arrest or attempting to make an arrest. *Ex parte Harris*, 216 So. 3d 1201, 1212 (Ala. 2016).

If an officer meets his burden, the plaintiff must show that one of two exceptions to immunity applies. *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008). First, neither state-agent immunity nor discretionary-function immunity applies "when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise." *Ex Parte City of Montgomery*, 272 So. 3d 155, 160 (Ala. 2018) (quoting *Suttles v. Roy*, 75 So. 3d 90, 94 (Ala. 2010)). Second, neither form of immunity applies when the

defendant "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte City of Homewood*, 231 So. 3d 1082, 1086 (Ala. 2017) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).

Plaintiffs bring six state-law claims against Officers Vickers and Hand. (Doc. 70 at 29–36). In Counts V–VI, Williams alleges that Officers Vickers and Hand falsely imprisoned him in violation of ALA. CODE § 6-5-170. *Id.* at 29–31. In Count VII, Gabrielle asserts that Officer Hand falsely imprisoned her in violation of the same statute. *Id.* at 31–33. In Counts VIII–IX, Williams claims that Officers Vickers and Hand negligently arrested and used force against him under Alabama common law. *Id.* at 33–35. Finally, in Count X, Mackynzie alleges that Officer Hand negligently used force against her under Alabama common law. *Id.* at 35–36.

The common denominator of Counts V–X is that they arise from Officers Vickers and Hand making an arrest or attempting to make an arrest. Accordingly, the Court finds that, at all times relevant to Plaintiffs' state-law claims, Officers Vickers and Hand were engaged in conduct entitling them to state-agent and discretionary-function immunity. Below, the Court considers whether Plaintiffs' state-law claims are nevertheless facially plausible under one of the two exceptions to immunity.

20

### 1.  *Williams's False Imprisonment Claims (Counts V–VI)*

Williams states a plausible false imprisonment claim against Officer Vickers and Officer Hand. Alabama law defines false imprisonment as "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." ALA. CODE § 6-5-170. An unlawful arrest—i.e., one lacking probable cause—is a legal basis for a false imprisonment claim. *Upshaw v. McArdle*, 650 So. 2d 875, 878 (Ala. 1994). Probable cause to arrest "exists where the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Walker v. City of Huntsville*, 62 So. 3d 474, 492 (Ala. 2010).

An arrest lacking "arguable probable cause" is indicative of malicious intent for purposes of overcoming state-agent and discretionary-function immunity. *Ex parte Harris*, 216 So. 3d at 1213; *Williams v. City of Montgomery*, 839 F. App'x 356, 364 (11th Cir. 2020) (per curiam). Arguable probable cause exists when "officers of reasonable competence in the same circumstances and with the same knowledge would disagree as to whether probable cause existed." *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179 (Ala. 2003). Thus, state-agent and discretionary-function immunity do not preclude officer liability on a false imprisonment claim when the underlying arrest lacked arguable probable cause. *Lambert v. Herrington*,

2022 WL 2345769, at *8 (11th Cir. June 29, 2022) (per curiam); *cf. Brown v. City of Huntsville*, 608 F.3d 724, 741 (11th Cir. 2010) (holding that state-agent and discretionary-function immunity bar a false imprisonment claim where the underlying arrest is based on arguable probable cause).

Officers Vickers and Hand arrested Williams for disorderly conduct[16] and resisting arrest.[17] (Doc. 70 at 8). Williams, however, did not engage in any violent behavior, make unreasonable noise, use abusive language or gestures, disturb the public, or obstruct traffic. *Id.* at 13, 19–20. Nor did he interfere with any law enforcement activity. *Id.* at 13. Rather, in the moments preceding his arrest, Williams was standing alone, at least fifteen feet away from Officers Vickers and Hand, attempting to comply with Officer Hand's order to leave the area. *Id.* at 13, 17–18.

---

[16] Under Alabama law, a person commits the offense of disorderly conduct "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following:

> (1) Engages in fighting or in violent tumultuous or threatening behavior.
>
> (2) Makes unreasonable noise.
>
> (3) In a public place uses abusive or obscene language or makes an obscene gesture.
>
> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons.
>
> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility.
>
> (6) Congregates with other person in a public place and refuses to comply with a lawful order of law enforcement to disperse.

ALA. CODE § 13A-11-7(a).

[17] Under Alabama law, a person commits the offense of resisting arrest "if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person." ALA. CODE § 13A-10-41.

Accordingly, Officers Vickers and Hand lacked probable cause to arrest Williams for disorderly conduct and resisting arrest. No reasonable officer in the same circumstances and with the same knowledge would disagree with that conclusion.

Tellingly, Officers Vickers and Hand do not even assert—at this stage of litigation, at least—that they had arguable probable cause to arrest Williams for disorderly conduct or resisting arrest. (Doc. 74 at 8–15); (Doc. 76 at 7–17). Instead, they maintain that they deserve state-agent and discretionary-function immunity on Williams's false imprisonment claims for the same reasons that they deserve federal qualified immunity on Williams's First Amendment retaliation claims. (Doc. 74 at 13–15); (Doc. 76 at 15–17). This argument is, in a word, meritless. Whether Officers Vickers and Hand retaliated against Williams in violation of a clearly established First Amendment right has absolutely no bearing whatsoever on whether Officers Vickers and Hand had arguable probable cause to arrest Williams for disorderly conduct and resisting arrest.

In sum, taking Williams's allegations as true and construing them in the light most favorable to him, Officers Vickers and Hand lacked arguable probable cause to arrest Williams for disorderly conduct and resisting arrest. Accordingly, Williams plausibly shows that state-agent and discretionary-function immunity do not bar his false imprisonment claims. He thus states a plausible false imprisonment claim against Officer Vickers and Officer Hand.

### 2.    *Gabrielle's False Imprisonment Claim (Count VII)*

Gabrielle states a plausible false imprisonment claim against Officer Hand. Under Alabama law, an officer who instigates or participates in an unlawful arrest is liable for false imprisonment even if he did not actually effectuate the arrest himself. *Crown Cent. Petrol. Corp. v. Williams*, 679 So. 2d 651, 654 (Ala. 1996); *see also* RESTATEMENT (THIRD) OF TORTS § 10 ("An actor who knowingly and substantially instigates, encourages, or assists another person's commission of . . . false imprisonment is subject to liability for that tort, even if the actor's conduct does not independently satisfy all elements of the underlying tort.").

In this case, Officer Hand, without provocation, grabbed Gabrielle, shoved her against a wall, and pulled her hair. (Doc. 70 at 12). He then ordered Officer Terry to arrest Gabrielle for disorderly conduct. *Id.* at 15, 32. Taking Gabrielle's version of things as true, Officer Terry lacked arguable probable cause to arrest Gabrielle for disorderly conduct, and Officer Hand substantially instigated or participated in Gabrielle's unlawful arrest. Accordingly, Gabrielle plausibly establishes that state-agent and discretionary-function immunity do not bar her false imprisonment claim. She therefore states a plausible false imprisonment claim against Officer Hand.

### 3.    *Williams's Negligence Claims (Counts VIII–IX)*

Williams fails to state a plausible negligence claim against Officer Vickers or Officer Hand. As explained *supra* Section III.B, state-agent immunity and

discretionary-function immunity protect an officer when he "exercises judgment" and conducts "discretionary functions" unless: (1) a law, rule, or regulation requires otherwise; or (2) the officer acts willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. *Hunter*, 941 F.3d at 1283. Allegations of negligence are insufficient to prove an officer acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. *Ex parte City of Tuskegee*, 932 So. 2d 895, 906 (Ala. 2005); *City of Birmingham v. Sutherland*, 834 So. 2d 755, 762 (Ala. 2002).

The crux of Williams's negligence claims—unsurprisingly, perhaps—is that Officers Vickers and Hand "acted with neglect, carelessness, or unskillfulness." (Doc. 70 at 34, 35). He alleges that Officers Vickers and Hand arrested and used force against him "in violation of: (1) the standard of care applicable to police officers; (2) the specific, mandatory, and non-discretionary duties prescribed by the APD[18] for performing their work; (3) failure to undergo required pre-SRO[19] screening protocols[;] and (4) failure to obtain SRO certifications and specific SRO training." *Id.* at 33, 35. He further alleges that Officer Hand failed to call a mental

---

[18] "APD" stands for "Athens Police Department."

[19] "SRO" stands for "School Resource Officer."

health worker to the scene of his arrest in violation of ALA. CODE § 22-52-91. *Id.* at 35.[20]

These allegations amount to little more than threadbare legal conclusions. For starters, Williams identifies neither a specific SRO requirement of Athens High School nor a mandatory or non-discretionary duty of the Athens Police Department. Additionally, Williams puts forth no facts to support his conclusion that Officer Hand violated ALA. CODE § 22-52-91. Nor does he assert that Officers Vickers and Hand acted maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law. Accordingly, Williams does not plausibly overcome state-agent and discretionary-function immunity on his negligence claims. Williams, therefore, fails to state a plausible negligence claim against Officer Vickers or Officer Hand.

### 4.    *Mackynzie's Negligence Claim (Count X)*

Mackynzie fails to state a plausible negligence claim against Officer Hand. She asserts that Officer Hand acted with "neglect, carelessness, or unskillfulness." (Doc. 70 at 36). She alleges that Officer Hand negligently used force against her "in violation of: (1) the standard of care applicable to police officers; (2) the specific, mandatory, and non-discretionary duties prescribed by the APD for performing their

---

[20] ALA. CODE § 22-52-91(a) requires a police officer to call a mental health worker to the scene of an arrest when the officer has reasonable cause for believing that the arrestee is mentally ill and likely an imminent danger to himself or others.

work; (3) failure to undergo required pre-SRO screening protocols[;] and (4) failure to obtain SRO certifications and specific SRO training." *Id.*

These allegations, like Williams's negligence allegations, are insufficient to state a plausible claim. Mackynzie does not identify any specific SRO requirement of Athens High School or any specific duty of the Athens Police Department. Nor does she allege that Officer Hand acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. Accordingly, Mackynzie does not plausibly overcome state-agent or discretionary-function immunity on her negligence claim. Thus, she fails to state a plausible negligence claim against Officer Hand.

## IV.   CONCLUSION

Plaintiffs—despite having had four bites at the proverbial apple—fail to state a plausible claim for relief in Counts I–II, VIII–X, and XII of their third amended complaint. Accordingly, the Court grants in part Officer Vickers's motion (Doc. 73) and dismisses Counts I and VIII with prejudice; grants in part Officer Hand's motion (Doc. 75) and dismisses Counts II and IX–X with prejudice; and grants in full Principal Carter's motion (Doc. 72) and dismisses Count XII with prejudice. The Clerk of Court shall terminate Principal Carter as a party to this suit. Lastly, the Court lifts the stay on this case (Doc. 33) and orders the parties to file a Rule 26(f) report by January 24, 2023.

**DONE** and **ORDERED** January 11, 2023.

_____

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE