## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **TERI WILLIAMS,** *individually and as next of friend of minor Kirby Williams,* **et al.,** | ) ) ) ) |
| **Plaintiffs,** | ) **Case No.: 5:21-cv-0510-LCB** |
| | ) |
| **v.** | ) ) |
| **CITY OF ATHENS et al.,** | ) ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

Before the Court is Defendants Randy Vickers and Bobby Hand's joint motion for summary judgment. (Doc. 105). For the reasons explained below, the Court will grant the motion.

## I. BACKGROUND

The plaintiffs in this case, Teri Williams, Mackynzie Kirby, and Gabrielle Kirby, filed their complaint on April 9, 2021, naming as defendants The City of Athens, Trey Holladay, Rick Carter, Randy Vickers, Bobby Hand, and Terry Hand. (Doc. 1). The plaintiffs have since filed three amended complaints against all defendants. (Doc. 15). Defendants City of Athens, Randy Vickers, Bobby Hand, and Rick Carter all filed motions to dismiss. (Docs. 17, 19, & 21). Thereafter, the plaintiffs filed an unopposed motion for leave to file a second amended complaint,

which this Court granted, and a second amended complaint was filed on July 20, 2021. (Docs. 34, 35, & 36). Accordingly, all pending motions to dismiss were denied as moot, but the parties jointly stipulated to dismiss defendant Terry Hand. (Docs. 38, 39, 40, 41 & 42).

After the plaintiffs filed their second amended complaint, all remaining defendants once again filed motions to dismiss. (Docs. 43, 44, 46, 48, 50, & 53). On February 1, 2022, the Court granted the City of Athens's motion to dismiss. (Doc. 65). On February 10, 2022, the Court held a hearing on the remaining defendants' motions to dismiss. (Doc. 69). At the hearing, the plaintiffs orally requested to file a third amended complaint, which this Court granted. (*Id.*). On February 24, 2022, the plaintiffs filed a third amended complaint. (Doc. 70). Unsurprisingly, the remaining defendants, Carter, Vickers, and Bobby Hand, all filed motions to dismiss.[1] (Docs. 72, 73, & 75). This Court granted Carter's motion to dismiss in its entirety, which dismissed him from this action. (Doc. 84). Additionally, this Court granted in part Vickers's and Hand's motions to dismiss but left some claims pending. (*Id.*). The remaining pending claims against Hand are (1) a § 1983 claim for excessive force by M. Kirby (Count III); (2) a § 1983 claim for excessive force by G. Kirby (Count IV); (3) a claim of the tort of false imprisonment in violation of Ala. Code § 6-5-17

---

[1] Defendant Trey Holladay was dismissed for lack of service of process on April 13, 2022. (Doc. 78).

by Williams (Count VI); and (4) a claim of the tort of false imprisonment in violation of Ala. Code § 6-5-17 by G. Kirby (Count VII). (Docs. 70 & 84). The remaining pending claim against Vickers is a claim of the tort of false imprisonment in violation of Ala. Code § 6-5-17 by Williams (Count V). (*Id.*).

After completing discovery, Vickers and Hand filed a joint motion for summary judgment on May 31, 2024. (Docs. 105 & 106). Importantly, the plaintiffs failed to file a response in opposition to the defendants' motion for summary judgment. In fact, the plaintiffs have not filed any substantive motions or pleadings since March of 2023.[2] Thus, Vickers and Hand's motion for summary judgment is unopposed.

## II. DISCUSSION

Summary judgment is appropriate where a movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). This means that the movant must show there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." *Id.* at 56(c)(1)(A).

---

[2] In March of 2024, the plaintiffs filed a motion for an extension of time to complete discovery. (Doc. 98). A notice of appearance was filed by attorney Spencer Bowley on behalf of the plaintiffs in November 2024. (Doc. 110).

In determining whether summary judgment is appropriate, the court views the facts in the light most favorable to the non-moving party. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). However, whereas here, the non-movant completely fails to respond, "summary judgment cannot be granted by default. . . [n]or should it be denied by default." FED. R. CIV. P. 56(e) advisory committee's note to 2010 amendment. The court "must review all of the evidentiary materials submitted in support of the motion for summary judgment" and "determine whether those materials demonstrate[] *the absence* of a genuine dispute of fact." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam*)); Foy v. Sheriff of Jefferson County, Alabama*, No. 23-11302, 2025 WL 671959, at *5 (11th Cir. Mar. 3, 2025). Nonetheless, the court may "consider [a] fact undisputed for purposes of [a] motion [for summary judgment]" where the non-movant fails to properly show a dispute, such as when there is a complete failure to respond. FED. R. CIV. P. 56(e)(2) and accompanying committee's note to 2010 amendment. The Court has reviewed Vickers and Hand's joint motion for summary judgment and the accompanying evidentiary submissions and finds that Vickers and Hand have satisfied their burden.

**A. Hand is Entitled to Summary Judgment on Both M. Kirby's and G. Kirby's § 1983 Claims.**

M. Kirby and G. Kirby asserted separate § 1983 claims for excessive force against Hand. (Doc. 70) (Count III, M. Kirby's claim against Hand) (Count IV, G. Kirby's claim against Hand). In the joint motion for summary judgment, Hand argues that he is entitled to summary judgment on both M. Kirby's claim and G. Kirby's claim because he is entitled to qualified immunity. (Doc. 106 at 22, 28, & 32).

In civil actions brought under § 1983, qualified immunity "offers complete protection" for police officers so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity protects a police officer only when the officer's challenged conduct is a "discretionary function" performed in his official capacity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The defendant in a § 1983 claim bears the initial burden to show he was performing a discretionary function at the time of the incident, and then the burden shifts to the Plaintiff to show that qualified immunity should not apply. *Id.*

Once the burden shifts to the plaintiff, the qualified immunity inquiry becomes fact intensive. *Anderson v. Creighton*, 483 U.S. 635, (1987). In resolving questions of qualified immunity at the summary judgment phase, the court engages

5

in a two-pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first prong requires the court to determine whether the facts, "taken in the light most favorable to the [Plaintiff,] show the officer's conduct violated a federal right." *Id.* If the court finds that the first prong is satisfied, then the court must determine, "whether the right in question was clearly established at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

### 1. Hand was performing a discretionary function.

An officer is performing a discretionary function when he takes actions that fall within his job responsibilities. *Holloman ex rel. Holloman v. Harland*, 370 F. 3d 1252, 1265 (11th Cir. 2004). The discretionary function inquiry is two-fold. *Id.* The court must ask whether the government employee was (a) performing a legitimate job-related function, (b) through means that were within his power to utilize. *Id.*

Officer Hand submits that he was "engaged in the performance of his official duties as a police officer for the City of Athens by working security and enforcing the criminal laws of Alabama at Athens High School and arresting individuals." (Doc. 106 at 27). Hand also cites Eleventh Circuit case law, where the Court explained that an officer working at a school was performing a discretionary function because he "was charged with the responsibility to investigate criminal activity that might be taking place" at the school, and that "[a]s part of that responsibility, [the officer]'s duties included, under the right circumstances, detaining and questioning

6

students and possibly arresting and handcuffing them." (*Id.*) (citing *Gray ex rel. Alexander v. Bostic*, 458 F. 3d 1295, 1302 (11th Cir. 2006)). There is no distinction here. Accordingly, Hand has met his initial burden to show that he was performing a discretionary function.

Thus, the burden shifts to M. Kirby and G. Kirby to show that Hand is not entitled to qualified immunity for their § 1983 excessive force claims. However, as neither M. Kirby nor G. Kirby filed a response in opposition to Hand's motion for summary judgment, both have failed to meet this burden. Nonetheless, that does not mean that Hand is automatically entitled to summary judgment based on qualified immunity. Rather, the Court must review Hand's evidentiary submissions and determine whether that evidence shows the absence of a genuine dispute of fact. Here, the evidentiary submissions must show that there is an absence of genuine dispute that Hand's use of force was reasonable and not excessive. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("The touchstone of the Fourth Amendment is 'reasonableness.'")

### 2. Neither M. Kirby Nor G. Kirby Can Establish a Constitutional Violation.

The first step of the qualified immunity analysis requires that M. Kirby and G. Kirby suffered a constitutional violation. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). As they both make § 1983 claims for excessive force, they must show that

Hand used force against them that was excessive and unreasonable in violation of the Fourth Amendment. *Brigham City*, 547 U.S. at 403.

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, the reasonableness inquiry asks, "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002). Indeed, the court must "slosh [its] way through" a "factbound morass" and look at the totality of the circumstances. *Scott v. Harris*, 550 U.S. 372, 383 (2007)

> i.    M. Kirby did not suffer a constitutional violation because Hand did not use excessive force against her.

In the third amended complaint, M. Kirby alleges that Hand "used an unreasonable and excessive amount of force when he exercised the use of a martial arts, open hand blow to her face, head, neck, shoulder, or back even though she was not posing any threat to him or anybody else . . . This force was far beyond any necessary or reasonable degree of force . . . [and] was in violation of the prohibition on unreasonable seizures within the Fourth Amendment." (Doc. 70 at 27–28).

Based on the totality of the circumstances, Hand's use of force against M. Kirby was reasonable and not excessive. Hand's evidentiary submissions show the following. Before Hand struck M. Kirby, he was "was pinned to the side wall of the airlock" with M. Kirby, G. Kirby, Malachi Kirby, Gerry Kirby, Amanda Loggins,

and "multiple other bystanders pushing him against the wall." (Doc. 107-5 at 12).

M. Kirby, who was originally separated from Hand by a crowd of people, walked

out of the crowd and slung her backpack to the ground. (Composite Video Footage

at 7:46–7:51). Once M. Kirby pushed her way back into the crowd, she used both

hands to push Hand in the back. (*Id.* at 7:52); (*See also* G. Kirby's Deposition at 56,

p. 217, lines 10–14 "Q: From 19:23 to 19:25 of Defendants' Exhibit 2, we just saw

Mackynzie in the white shirt shove Officer Hand in the back using both of her hands,

correct?" "A: Yeah."); (Doc. 107-3 ("M. Kirby's Deposition") at 16, pp. 56–57, lines

23–25, 1 "Q: So from 19:20 to 19:25, we just saw you use two hands to shove Officer

Hand in the back, correct?" "A: Yeah.")). With M. Kirby in the mix, Hand was the

only officer present and was surrounded by at least four people who were in some

way or another, yelling, screaming, pushing, pulling, slapping, punching, or kicking

at him. (Doc. 107-5 at 9–13). However, most importantly, Hand was pinned with his

back to the wall and reasonably believed that he felt someone grab at his weapon

belt, where gun was holstered. (*Id.*). Accordingly, Hand used a single-handed strike

to temporarily subdue M. Kirby from reaching his weapon belt. (Doc. 106 at 37).

Based on the situation Hand was faced with, his conduct, a single strike against M.

Kirby, was reasonable and not excessive. Thus, Hand is entitled to qualified

immunity.

    ii.    <u>G. Kirby did not suffer a constitutional violation because Hand did not use excessive force against her.</u>

In the third amended complaint, G. Kirby alleges that "while Amanda Loggins was being arrested, Officer Hand grabbed G. Kirby without provocation and shoved her up against a wall, also grabbing her and pulling her by her hair," which was an "unreasonable and excessive amount of force." (Doc. 70 at 12, 28).

First, after reviewing the evidence, there is no evidence in the record to support G. Kirby's assertion that Hand pulled her hair. "In the context of cases involving video evidence, t[he court] will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of facts." *Logan v. Smith*, 439 Fed. App'x 798, 800 (11th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 280 (2007)). After watching the submitted video footage extensively, the Court does not see a single instance where Hand grabbed or pulled G. Kirby's hair as she alleges in her complaint. In her deposition, G. Kirby testified that the Composite Video Footage (Exhibit 2 to Doc. 1-7-2) shows Hand pull her hair at the 7:37 timestamp. (Doc. 107-1 ("G. Kirby's Deposition") at 33, pp. 128, lines 1–4, "Q: There at 7:37 in the video on the right you said that's when Officer Hand grabbed your hand?" "A: Yeah."). However, in the Composite Video Footage at 7:37, the evidence does not show Hand grab G. Kirby's hair, nor does any of the other submitted video footage.

Additionally, G. Kirby's contact with the wall was an incidental contact, not excessive force. G. Kirby alleges that Hand "shoved her up against a wall." (Doc. 70 at 12, 28). However, she later testified that she was "squished up against the wall" because Hand was trying to get to her mother, Loggins, who was in the corner against the wall, behind G. Kirby. (G. Kirby's Deposition, at 46, p. 179, lines 7–17, "Q: Okay. What are you doing at this point?" "A: Squished up against the wall because he got me grabbed, like he's grabbing me, pushing me against the wall. And my mom's behind me. So both of our backs are on the glass wall, basically. He's shoving us into it. Like he's not letting me go. I'm just stuck right there. Stuck in between." "Q: And it was your belief that he was trying to grab at you and your mother, right?" "A: Yeah."). The video evidence confirms this. (*See* Composite Video Footage at 8:02–8:13). Hand was trying to arrest Loggins, and G. Kirby was physically in the way. (*Id.*; *see also* Doc. 107-5 at 13). Any contact that Hand made with G. Kirby was simply incidental to Loggins's arrest and was not excessive force against G. Kirby.

However, even if Hand did use force against G. Kirby, it was reasonable and not excessive. At most, Hand's efforts to reach Loggins, whom he was trying to arrest, caused G. Kirby to be pressed against the wall, which is de minimis force. Indeed, the Eleventh Circuit has "found far more aggressive and injurious uses of force to be de minimis and reasonable." *Brown v. Bellinger*, 843 Fed. App'x 183,

188 (11th Cir. 2021). For example, in *Nolin v. Isbell*, the Court found de minimis force where a police officer saw two boys fighting and grabbed one of the boys from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back, pushed his head against the van and searched his groin area. *Nolin v. Isbell*, 207 F.3d 1253, 1254–58 (11th Cir. 2000). As the Court explained in *Nolin* and as is relevant here, "de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Id.* at 1257.

Accordingly, because Hand did not use excessive force against G. Kirby, she has not suffered a constitutional violation, and Hand is entitled to qualified immunity on her claim.

For the reasons explained above, Hand did not use excessive force against neither M. Kirby nor G. Kirby. Accordingly, he is entitled to qualified immunity on both claims, and summary judgment in favor of Hand is proper on M. Kirby's § 1983 Claim (Count III) and G. Kirby's § 1983 claim (Count VII).

### B. <u>Vickers and Hand are Entitled to Summary Judgment on the State Law Claims.</u>

T. Williams, on behalf of K. Williams, asserted an Alabama state law claim for the tort of false imprisonment in violation of Ala. Code § 6-5-170 against both Vickers and Hand (Count V). (Doc. 70). G. Kirby has also asserted a claim for the tort of false imprisonment against Hand (Count VII). (*Id.*). In their joint motion for

summary judgment, Vickers and Hand argue that they are entitled to state-agent immunity from these claims. (Doc. 106 at 50).

Under Alabama law. "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010) (quoting *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002)). State-agent immunity bars suits against law enforcement officers effecting arrests, except if the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of the law, or if the Constitution or laws of the United States or Alabama require otherwise. *Id.* (citing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).

The defendant asserting state-agent immunity bears the initial burden to show that he was acting within the scope of his discretionary function. *Id.* (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)). Under Alabama law, an officer who is responding to an emergency call at the time of the alleged violation is performing a discretionary function. *Ex parte Coleman*, 145 So. 3d 751, 758 (Ala. 2013). Additionally, "arresting or attempting to arrest an individual is a discretionary function." *Stryker v. City of Homewood*, No. 2:16-CV-0832-VEH, 2017 WL 3191097, at *17 (N.D. Ala. July 27, 2017) (quoting *Ex Parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017)).

13

Vickers and Hand were both acting within the scope of their discretionary functions. The submitted evidence shows Vickers was at Athens High School because he was responding to a call for assistance. (Doc. 106 at 50); (Doc. 107-7 at 3). Additionally, Hand was working as an Athens City police officer at Athens High School to enforce the criminal laws of the State of Alabama and was arresting both students and non-students. (Doc. 107-5 at 15). Accordingly, both Vickers and Hand have established that were acting with the scope of their discretionary functions.

Once a defendant shows he was performing a discretionary function, then the burden shifts to the plaintiff to show that the defendant acted "willfully, maliciously, fraudulently, in bad faith, or beyond his [ ] authority." *Id.* Typically, an officer will receive state-agent immunity for his role in an arrest so long as he had "arguable probable cause" to arrest. *Id.* (citing *Borders v. City of Huntsville*, 875 So. 2d 1168, 1180 (Ala. 2003)). Therefore, the burden shifts to Williams and G. Kirby to show that Hand and/or Vickers should not receive state-agent immunity for their respective claims.

However, neither Williams nor G. Kirby submitted a response in opposition to Hand and Vickers's joint motion for summary judgment. (*See generally* Docket Sheet). Thus, neither of them have met their burden to show that Hand and/or Vickers are not entitled to state-agent immunity. Nonetheless, this does not mean that Vickers and Hand are automatically entitled to summary judgment based on

14

state-agent immunity. Rather, the Court must review Vickers and Hand's evidentiary submissions and determine whether that evidence shows the absence of a genuine dispute of fact. Here, the evidentiary submissions must show that there is an absence of genuine dispute that there was arguable probable cause to arrest K. Williams and arguable probable cause to arrest G. Kirby.

A false arrest claim requires proof that the defendant officer caused the plaintiff to be arrested without probable cause. *Ex parte Harris*, 216 So. 3d 1201, 1213 (Ala. 2016). An officer is immune under state-agent immunity when he has "arguable probable cause." *Id.* (citing *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179 (Ala. 2003)). Arguable probable cause exists "when an officer makes an arrest lacking probable cause if officers of reasonable competence in the same circumstances and with the same knowledge would disagree as to whether probable cause existed." *Id.* (citing *Borders*, 875 So. 2d at 1179). Whether a police officer possesses arguable probable cause to arrest an individual depends on the elements of the alleged offense and the operative set of facts. *Id.* (citing *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010)).

**1. Vickers and Hand had arguable probable cause to arrest K. Williams and are entitled to state-agent immunity for T. Williams's claim.**

In their motion for summary judgment, Vickers and Hand argue that they possessed arguable probable cause to arrest K. Williams for disorderly conduct.

(Doc. 106 at 50). According to the Defendants, "[t]he undisputed video evidence shows that [K.] Williams repeatedly and blatantly 'refuse[d] to comply with a lawful order of law enforcement to disperse.'" *Id.* (citing Ala. Code § 13A-11-7(a)(6)). Under § 13A-11-7(a)(6), "[a] person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . [c]ongregates with other person in a public place and refuses to comply with a lawful order of the police to disperse." Ala. Code § 13A-11-7(a)(6).

The Defendants' evidentiary submissions show the following. Several students were congregating in the main lobby of Athens High School. (Doc. 107-5 at 3). Vice Principal Willie Moore asked Officer Hand to have the students disperse from the front lobby. (*Id.)*; (Exhibit A to Doc. 107-5 ("Hand's Body Camera Footage 1") at 17:06:45). Accordingly, Hand began telling students that if they did not have an appointment with the principal, they needed to leave. (*Id.* at 17:07:17–20, 17:07:49–53). One of the students, K. Williams, responded, "is (sic) you my daddy?" and continued to stand there. (*Id.* at 17:07:58–17:08:03). Hand told K. Williams multiple times to "just listen" and that he "needed to go." (*Id.* at 17:08:01–03). K. Williams walked to the other side of the lobby but did not disperse. (*Id.)*.

Upon seeing a peer arrested and escorted out of Athens High School, K. Williams followed Officers Terry and Hand out of the building, yelling "fuck 12!"

multiple times.[3] (Doc. 107-5 at 7); (Exhibit B to Doc. 107-5 ("Hand's Body Camera Footage 2") at 17:10:29–50); (Doc. 107-2 ("Williams's deposition), at 11, pp. 37–38, lines 23–25, 1–2). K. Williams was standing with G. Kirby outside on the front steps of the school, continuing to yell, and more students began to exit the building. (Doc. 107-5 at 7); (Hand's Body Camera Footage 2 at 17:10:50). Accordingly, Hand approached G. Kirby and K. Williams and told both, but importantly, K. Williams at least ten times to disperse. (Hand's Body Camera Footage 2 at 17:10:53–17:11:15) (showing Hand telling K. Williams to "go," "leave," "get in the school," and "get to class"). K. Williams initially complied. (*Id.* at 17:11:15–18) (showing K. Williams entering the building).

Approximately five minutes later, while Hand was arresting Loggins, K. Williams came back outside even after Hand had previously told him to go inside. (Doc. 107-2 at 17) (K. Williams testifying on p. 64, lines 18–20, "Yeah. It appears that I'm outside after he said go back in, yes."); (Hand's Body Camera Footage 2 at 17:15:37). Upon seeing and hearing K. Williams shout again, Hand told K. Williams to "go on. go." (Hand's Body Camera Footage 2 at 17:15:37).

---

[3] When asked what "fuck 12!" meant, K. Williams testified that he didn't know how explain it. (*See* Williams's deposition at 11, p. 39, lines 3–17). K. Williams then clarified that "12" meant "the police." (*Id.* at lines 18–19). When asked if "fuck 12" meant "fuck the police," K. Williams answered, "[i]f that's what you want to call it," and testified that he did not know what he meant when he said the phrase. (*Id.* at pp. 39–40, lines 20–25, 1–8).

When Officer Vickers arrived at the school, he observed Hand attempting to place a handcuffed adult woman into the back seat of his patrol car, while K. Williams "was standing very close." (Doc. 107-7 at 3); (Exhibit A to Doc. 107-7 ("Vickers's Body Camera Footage") at 17:15:23); (Williams's Deposition at 19, p. 69, lines 3–6) (Q: "Okay. You've come off the sidewalk near the school and have – are standing in the parking lot, correct?" A: "Yes."). K. Williams was "yelling," and causing the woman to also "shout, prompting Hand to, again, tell K. Williams to "go on" and "leave." (Doc. 107-7 at 3). K. Williams did not obey Hand's command to leave, but "raised his hands defiantly, stating[,] 'What are you gonna do to me?'" (Vickers's Body Camera Footage at 17:15:24). Because K. Williams was "continuing to interrupt [Hand's]" arrest of Loggins, Hand asked Vickers to get K. Williams to leave. (Doc. 107-7 at 3). Vickers approached K. Williams and "ordered him to leave multiple times," four times to be exact. (*Id.*); (Vickers's Body Camera Footage at 15:15:25–28).

As Vickers approached K. Williams, K. Williams, instead of following commands, began yelling at Vickers "don't touch me." (Vickers's Body Camera Footage at 17:15:27–29). Vickers reached for K. Williams's arm to escort him into the school. (Doc. 107-7 at 5); (Vickers's Body Camera Footage at 17:15:29–30). When that happened, K. Williams jerked his arm away and screamed, "don't touch

me!" (Vickers's Body Camera Footage at 17:15:31). Thereafter, Vickers began to initiate K. Williams's arrest. (*Id.*).

Hand and Vickers's evidentiary submissions show that they had probable cause to arrest K. Williams and are entitled to state-agent immunity. As explained above, whether Hand and Vickers had probable cause to arrest K. Williams depends on the elements of disorderly conduct and the facts of the situation. Even when viewed in a light most favorable to K. Williams, the facts show that there was probable cause to arrest K. Williams for disorderly conduct. First, the facts show that K. Williams was intending to cause a public inconvenience, annoyance, or alarm as he repeatedly yelled out "fuck 12!" Second, K. Williams congregated with another in a public place—the other students in the front lobby of the school, then G. Kirby, then in the parking lot, where he yelled back and forth with Loggins. Finally, K. Williams was given multiple warnings from both Hand and Vickers to disperse, a command which he disregarded. These facts, by themselves, show that Hand and Vickers had probable cause to arrest K. Williams, which entitles them to state-agent immunity. Accordingly, because Hand and Vickers are entitled to state-agent immunity, their motion for summary judgment on Williams's false imprisonment claim is due to be granted.

> **2. Hand had arguable probable cause to arrest G. Kirby and is entitled to state-agent immunity for her claim.**

Hand argues that he had arguable probable cause to arrest G. Kirby for multiple offenses, including, disorderly conduct, resisting arrest, assault, obstruction, and harassment. (Doc. 106 at 45–46). While he advances multiple theories, Hand need only show arguable probable cause for one offense to receive state-agent immunity. Accordingly, the Court limits its discussion.

Hand's evidentiary submissions show the following. While Hand was arresting another student, Makaleb Boykin, G. Kirby positioned herself between Hand and Boykin. (Doc. 107-5 at 5; Hand's Body Camera Footage 1 at 17:08:21–24). Hand then told G. Kirby not to interfere with Boykin's arrest. (*Id.* at 17:08:26–27). However, despite this warning, G. Kirby continued to linger, touch and talk to Boyd, push her phone in the officers' faces, and yell at them, all as a large crowd gathered around. (Doc. 107-5 at 5–7; Hand's Body Camera Footage 1 at 17:08:54–17:09:48; Exhibit 2 to Doc. 107-2 ("Composite Video Footage") at 4:15–6:00). During the arrest, Hand told G. Kirby that she "need[ed] to go," and to "go in the office." (Composite Video Footage at 4:47, 5:12). Despite this warning, G. Kirby followed Hand outside and continued to shout, along with K. Williams. (Composite Video at 6:13–6:49). Officer Hand then told G. Kirby to "go," "leave," "get in the school," and "get to class" at least ten separate times. (Hand's Body Camera Footage 2 at 17:10:53–17:11:15).

20

When G. Kirby went inside, however, things began to escalate. Hand interacted with G. Kirby's mother, Loggins, who was pacing the airlock yelling "Black Lives Matter." *(Id.* at 17:11:15). When Hand told Loggins she needed to exit the building, G. Kirby again inserted herself between Hand and Loggins, and began to argue with Hand. (*Id.* at 17:11:34–47). As G. Kirby argued with Hand, her sister, M. Kirby entered the airlock and also began arguing with Hand. (*Id.* at 17:11:41). G. Kirby then inserted herself between Hand and M. Kirby. (*Id.* at 17:11:49). As G. Kirby's brother, Malachi Kirby entered the airlock and approached Hand, Hand put out his arm to create distance between himself and Malachi Kirby. (*Id.*; Doc. 107-5 at 10). As Hand did this, G. Kirby, who was still in front of him, elbowed Hand. (Doc. 107-5 at 10.; *see also* Doc. 106 at 13). As a crowd of people gathered, Loggins, M. Kirby, Malachi Kirby, and Gerry Kirby pushed, pulled, and hit Hand, with Loggins punching him in the face. (Composite Video at 7:36–7:41; Doc. 107-5 at 11). At that point, Hand switched his focus to Loggins and reach for her hands to arrest her. (Doc. 107-5 at 11). However, G. Kirby again inserted herself between Hand and Loggins and slapped Hand in the face. (Composite Video at 7:43). G. Kirby remained positioned in front of Loggins and would not move and became combative with Hand. (*Id.* at 7:56–8:06). Eventually, once Loggins was on the floor, G. Kirby, who was also on the floor, began kicking, hitting, and screaming at Hand, "get off of my momma!" (*Id.* at 8:32–8:59). Once G. Kirby was off of the floor and

away from Loggins, Hand was able to arrest Loggins, (Doc. 107-5 at 13). G. Kirby later gave a public statement and testified that she "got in the middle of it," which "wasn't a good idea," but "she didn't want to see her mom hurt." (Doc. 107-1 at 59–60).

Based on all of Hand's evidentiary submissions, there was arguable probable cause to arrest G. Kirby for disorderly conduct under Ala. Code. § 13A-11-7(a)(1).[4] Specifically, § 13A-11-7(a)(1) provides that "[a] person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he or she . . . [e]ngages in fighting or in violent tumultuous or threatening behavior." *Id.* G. Kirby's slap to Hand's face, elbow to his chest, and her thrashing and kicking on the floor certainly falls within this category. Accordingly, because Hand had arguable probable cause to arrest G. Kirby for disorderly conduct, he is entitled to state-agent immunity, and thus, summary judgment on G. Kirby's state law claim.

For the reasons explained above, Hand and Vickers both are entitled to state-agent immunity and summary judgment on Williams's false imprisonment claim (Count V) and Hand is entitled to state-agent immunity and summary judgment on G. Kirby's false imprisonment claim (Count VII).

---

[4] There was arguable probable cause to arrest G. Kirby for other offenses too, but for the sake of brevity in this Court's analysis, the discussion is limited.

### III.    CONCLUSION

Hand is entitled to qualified immunity and thus summary judgment for M. Kirby's § 1983 claim and G. Kirby's § 1983 claim. Additionally, Hand is entitled to state-agent immunity and summary judgment on Williams's state law claim (Count V). Finally, Vickers is also entitled to state-agent immunity and summary judgment on Williams's state law claim (Count VII).

Accordingly, Vickers and Hand's joint motion for summary judgment (Doc. 105) is **GRANTED.** A Final Judgment consistent with this Memorandum Opinion will be entered separately.

**DONE** and **ORDERED** this May 23, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE